## MED-A-DENT CO. v. L. D. CAULK CO.

(District Court, D. Delaware. February. 24, 1925.)

**1. Libel and slander ⊛97—Demurrer to new assignment held to search entire record.**

Demurrer to plaintiff's new assignment on ground that it was inapplicable and that there was nothing on which it could be predicated *held* to search entire record, making examination of alleged libelous publication, declaration, etc., necessary.

**2. Pleading ⊛175—Purpose of new assignment is to avoid effect of evasive plea.**

Purpose of new assignment is to avoid effect of evasive plea which apparently answers declaration, though not really applying to matter which plaintiff had in view.

**3. Pleading ⊛175—Test of propriety of new assignment stated.**

One test of propriety of new assignment is whether plea in justification meets charges of declaration or whether plea is applicable to different matter from that which plaintiff had in view and intended to allege.

**4. Libel and slander ⊛94(4)—Plea in justification held valid.**

Where declaration alleged that publication charged misbranding of dental preparation, in violation of Food and Drugs Act (Comp. St. §§ 8717–8728), allegations of defendant's plea that defendant examined jar of preparation and found it misbranded within section 8, as amended by Act Aug. 23, 1912 (Comp. St. § 8724), and that plaintiff had shipped packages of the preparation so misbranded to other states, to show truth of publication, *held* valid plea in justification.

**5. Druggists ⊛1—Congress could not pass statute generally prohibiting misbranding.**

Since Constitution does not confer on Congress express power to legislate respecting food and drugs, Food and Drugs Act (Comp. St. §§ 8717–8728) rests for its validity on power of Congress to legislate for District of Columbia and territories and on power conferred by interstate commerce clause; hence Congress could not pass statute generally prohibiting misbranding.

**6. Libel and slander ⊛94(1)—Rule as to sufficiency of plea in justification stated; "general;" "specific."**

Allegation of truth of alleged libelous article is sufficient justification where charge is specific, but, if charge is general, justification must aver acts which constitute offense of which plaintiff is charged to be guilty, but terms "general" and "specific" are relative.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, General; Specific.]

**7. Libel and and slander ⊛94(4)—Publication held to charge violation of Food and Drugs Act generally, entitling defendant to allege any fact prohibited by act in justification.**

Publication of article indicating that label on plaintiff's dental preparation misrepresented its curative value for pyorrhea, and quoting from Food and Drugs Act, § 8, as amended by Act Aug. 23, 1912 (Comp. St. § 8724), *held* to charge violation of act generally, and was not limited to section 1, and defendant in justification was entitled to allege any facts prohibited by act, providing that misbranding be one of such facts.

**8. Libel and slander ⊛86(1) — Innuendoes in declaration not borne out by alleged libelous publication may be rejected as surplusage.**

Innuendoes in declaration not borne out by alleged libelous publication may be rejected as surplusage.

**9. Libel and slander ⊛94(4) — Defendant's plea in justification held insufficient on demurrer as not responsive to declaration.**

Plea in justification, on theory that declaration charged violation of Food and Drugs Act (Comp. St. §§ 8717–8728), was insufficient on demurrer, where declaration alleged that publication charged plaintiff with fraudulently misrepresenting curative quality of its dental preparation.

**10. Pleading ⊛362(2) — Averments of fact tending indirectly and argumentatively to support general denial in replication must be stricken out.**

Averments of fact tending indirectly and argumentatively to support general denial in replication must be stricken out.

Action by the Med-A-Dent Company against the L. D. Caulk Company. On defendant's demurrer to plaintiff's new assignment. Demurrer sustained in part, and overruled in part.

Robert Penington and Charles C. Keedy, both of Wilmington, Del., for plaintiff.

Robert H. Richards, of Wilmington, Del., for defendant.

MORRIS, District Judge. [1] The defendant, the L. D. Caulk Company, in October, 1923, circulated a paper or pamphlet called Milford News, containing an article entitled "More Misbranding," which the plaintiff, Med-A-Dent Company, by its declaration filed in this case, alleges to have been libelous, in that thereby the defendant "meant to charge the said plaintiff, by manufacturing its said product, called Med-A-Dent, * * * with having committed the offense and being guilty of the crime of violating the provisions" of the Food and Drugs Act of June 30, 1906 (34 Stat. 768), as amended by Act of August 23, 1912 (37 Stat. 416 [Comp. St. §§ 8717–8728]). To that declaration the pleas originally filed by the defendant were "not guilty," "release," "statute of limitations," and two special pleas in justification. To the pleas of justification the plaintiff demurred. The demurrer was sustained upon the ground that the article was unambiguous, defamatory, and

actionable per se, in that it imputed to the plaintiff the commission of a crime. Thereafter the defendant, upon leave had, filed a new plea in justification. To this new plea the plaintiff replied by both a replication de injuria sua propria and a new assignment. To the new assignment the defendant has demurred upon the ground that a new assignment is here inapplicable, and that there is nothing upon which it can be properly predicated. Such a demurrer searches the entire record and makes essential an examination of the alleged publication, the declaration, and the Food and Drugs Act as amended as well as the principles pertaining to pleas in justification and new assignments.

The declaration sets out in hæc verba, with inducement, colloquium, and innuendoes, the whole of the alleged defamatory publication, the essential part of which is:

"The cure-all brotherhood was not bothered much by anybody until June 30, 1906, when the Food and Drugs Act became a law. Prior to that date anyone could make and sell proprietary medicines without regard of any injurious, harmful and narcotic drugs they might contain, or the false and fraudulent claims that seemed like virgin truth and blessed hope to the ignorant, innocent gullibles.

"Morphine was a common constituent of toothing syrups for infants; alcohol was the basic constituent of cure-alls; and opium or chloroform supplied the dope in consumption cures. A few public spirited editors of magazines and newspapers were willing to forego the publicity-tribute of the nostrum vendor. Vigorous action by these men gradually aroused a general indignation, and finally raised political and official pressure enough to formulate and pass this most valuable and merciful piece of legislation, which already has saved the lives of countless thousands.

"An amendment of August 23, 1912, relating to drugs, deems an article misbranded under the Food and Drugs Act 'if the package or label shall bear any statement, design or device, regarding the curative or therapeutic effect of such article, or any of the ingredients or substances contained therein, which is false and fraudulent.'

"The presence of narcotic drugs such as opium and morphine, cocaine and chloroform, and their quantities, must be declared on the label. This declaration does not eliminate the dangerous substances. It merely warns the purchaser of their presence. Much need still exists for a more complete reform that will protect the medically ignorant against their own ignorance—the millions who do not heed the warning on the label because they know practically nothing of drugs or their effects.

"Continued publicity on tuberculosis and the work of tuberculosis commissions has to a large extent eliminated the traffic in consumption cures. Therefore the pyorrhea cure takes the place of the consumption cure. Pyorrhea is brought into the limelight as the dread disease, with the terrifying threat of 'four out of five.' For this purpose the pyorrhea fake is a better game than the consumption fake because it draws on a bigger ratio of suckers. The public is continuously picked on by propaganda advising that dentists and physicians have no cure for this four-out-of-five disease, but that it can be prevented or cured by the particular medicine or device which is featured.

"Most public magazines of national circulation carefully censor their advertising pages. The best medical journals do likewise. How do the dental magazines compare on this point? Do they accept any copy that is offered? Witness, merely as one example, the advertisement of a new root canal filling in a recent issue of a leading dental journal. Chemical analysis shows that this preparation contains 73% of chloroform by volume, which is dissipated by evaporation, leaving behind only 27% of solid residue, but the printed claim reads 'nonshrinking—it will form a solid union with gutta percha points.'

"The dentist, fortunately, is capable of detecting many of these false and misleading statements, but in most cases such errors cannot be proved except by chemical analysis, bacteriological tests, or tests of physical properties. The dentist can only partly protect his patient and himself against inefficient medicaments, imperfect dental materials and impractical devices, tooth pastes, mouth washes, etc.

"By exercising his professional judgment he can fairly well protect himself and his patients against the consequences of misstatements regarding materials offered for professional use. But what can he do about the various dental treatments and washes advertised direct to the public? It is through these that the greatest damage is done to the public and to the prestige of the dental profession. One thing the dentist can do is to advise his patients against the harmful or worthless nostrum, providing he knows or can surmise the facts.

"The Chemical Research Laboratory of

The L. D. Caulk Company is willing to assist in this necessary and important reform. As examples, showing this need, here are some facts regarding four preparations, two of which were submitted for examination by practicing dentists, one by the maker of a 'pyorrhea remedy' and the fourth by a layman: * * *

"Under its paraffin seal the jar of Med-A-Dent contains a light yellow paste having the consistency of tooth paste, strong odor of peppermint, and a sweet peppermint taste. It is partly soluble in water, giving an alkaline reaction. Microscopical examination shows no starch or vegetable tissue but there is present an amorphous powder having the appearance of precipitated chalk.

"The examination shows this preparation to be nothing more complicated than a tooth paste consisting largely of glycerin, chalk and soap, oil of peppermint, menthol and a yellow dye; nevertheless (according to the circular that accompanies the jar) 'Med-A-Dent Home Treatment, used according to directions will clear up bleeding, inflamed, spongy, swollen and tender gums, producing a healthy mouth. Use once a day, just before retiring. After cleansing the teeth, take a small quantity of Med-A-Dent Pyorrhea Treatment and with it massage the gums gently, working well between the teeth and under the gums and into the pockets around the teeth. Do not wash out the mouth with anything, but let the treatment lay around the teeth and gums all night.'

"If Med-A-Dent will so easily accomplish the effects its makers claim for it, then dental treatment for gingivitis and pyorrhea is no longer necessary, provided the patient can be induced to go to bed with a mouthful. * * *

## "Conclusions.

"Pyorrhea can be cured only by treatment carried out by the dentist. Such treatment involves the thorough removal of mechanical irritants, correction of malocclusion, and appropriate surgical and therapeutic treatment. It cannot be cured simply by mouth washes, tooth pastes or astringent preparations applied locally. Leading the public to believe that pyorrhea can be prevented or cured without professional treatment by a dentist is not only contrary to law but inimical to public and professional interests, because it encourages the sufferer to delay or even shun dental treatment. Mouth washes and tooth pastes are of material assistance in prophylaxis and of value for home treatment in conjunction with professional

treatment of pyorrhea, providing they are harmless and effective and the patient gives full co-operation in their use.

"Any dentist can do much good by devoting some time to the education of his patients along these lines. The purpose of this article is simply to point out, in regard to publicly advertised pyorrhea remedies, the kind of facts that will aid him in this educational work."

The plaintiff alleges that by the foregoing publication the defendant meant to charge the plaintiff with a violation of the Food and Drugs Act as amended. That act provides in part:

"§ 1. It shall be unlawful for any person to manufacture within any Territory or the District of Columbia any article of food or drug which is adulterated or misbranded, within the meaning of this act. * * *" (The penalty provided for a violation is a fine or imprisonment or both.)

"§ 2. The introduction into any state or territory or the District of Columbia from any other state or territory or the District of Columbia, or from any foreign country, or shipment to any foreign country of any article of food or drugs which is adulterated or misbranded, within the meaning of this act, is hereby prohibited; and any person who shall ship or deliver for shipment from any state or territory or the District of Columbia to any other state or territory or the District of Columbia, or to a foreign country, or who shall receive in any state or territory or the District of Columbia from any other state or territory or the District of Columbia, or foreign country, and having so received, shall deliver, in original unbroken packages, for pay or otherwise, or offer to deliver to any other person, any such article so adulterated or misbranded within the meaning of this act, or any person who shall sell or offer for sale in the District of Columbia or the territories of the United States any such adulterated or misbranded foods or drugs, or export or offer to export the same to any foreign country, shall be guilty of a misdemeanor, and for such offense be fined not exceeding two hundred dollars for the first offense. * * *" Comp. St. §§ 8717, 8718.

Section 8 of the act provides that for the purposes of the act an article shall be deemed to be misbranded, in case of drugs, under either of two conditions therein stated but not here pertinent. A third condition was added by the amendment of August 23, 1912, which provides:

"Third. If its package or label shall bear

or contain any statement, design, or device regarding the curative or therapeutic effect of such article or any of the ingredients or substances contained therein, which is false and fraudulent." Comp. St. § 8724.

[2-4] The purpose of a new assignment is to avoid the effect of an evasive plea which apparently answers the declaration though such plea does not really apply to the matter which the plaintiff had in view. 1 Wms. Saund. 299b. Consequently, one test of the propriety of the new assignment filed by the plaintiff is whether the plea in justification meets the charges of the declaration, or whether, on the other hand, the plea is applicable to a different matter from that which the plaintiff had in view and intended to allege. The plea sets up facts intended to show the truth of the publication and that the same was written and published properly for public information and with no malicious or mischievous motives. The facts relied upon to establish the truth of the publication are that the defendant, at the request of a practicing dentist, had examined a jar of Med-A-Dent, and found the same misbranded within the meaning of the amendment of August 23, 1912, and that at specified times prior to said publication the plaintiff had shipped certain packages of Med-A-Dent so misbranded from specified points in one state to specified points in other states. The plaintiff asserts, however, that the crime with which the defendant, by the publication in question, charged the plaintiff and with which it was plaintiff's purpose by its declaration to allege the defendant charged the plaintiff was that set out specifically in section 1 of the Food and Drugs Act, not that specified in section 2 thereof, and not, broadly, any crime prohibited by the statute, as defendant's plea would indicate it supposed, but that, the defendant not having been sufficiently guided by the declaration to the real cause of complaint, and hence led to direct its plea to a matter different from that which the plaintiff had in view, it became necessary and proper to file a new assignment for the purpose of setting the defendant right. Passing the procedural question of whether to a plea in justification filed to a declaration of the character of that in suit a plaintiff may both traverse the plea and also new assign, the fundamental question here presented upon the merits is whether the defendant by its publication charged the plaintiff with the violation of the Food and Drugs Act generally, or was so specific in its charge as to indicate the violation of the first section

4 F.(2d)—9

thereof. It is, of course, obvious that, if the violation charged by the publication was of the former character, the defendant may justify by showing that the plaintiff committed any one or more of the combination of acts made a crime by the statute. Such a plea would meet the charge of the declaration, and to it a new assignment would not lie. If, on the other hand, the publication charges the violation by the plaintiff of section 1 of the statute, the defendant may justify only by setting up in his plea the commission by the plaintiff of the combination of acts prohibited by that section of the statute. A plea that the plaintiff had violated some other section of the statute would, of course, not meet the charge of the declaration. Should such a plea be filed it is quite possible that, for the purpose of setting the defendant right, and thereby obtaining a plea relevant and proper to the cause of action declared upon, the plaintiff would be entitled by new assignment to make more specific and clear the real cause of action. As the declaration does not, by its inducement or otherwise, allege facts which change in any degree the natural and usual import of the words used in the publication, the solution to the basic question raised by the demurrer, Does the publication charge the defendant with a violation of the Food and Drugs Statute generally or with the commission of only such acts as constitute a violation of section 1 of that statute? must be found from an inspection of the publication itself.

[5-7] The Constitution does not confer upon the Congress any express power to legislate with respect to food and drugs. The act rests for its validity upon the power of Congress to legislate generally for the District of Columbia and the territories and upon the power conferred upon it by the interstate commerce clause of the Constitution. Hence, though misbranding was an evil to the prohibition of which the act was directed, yet the Congress, by reason of its limited powers, could not pass an act broadly and generally prohibiting misbranding. It was restricted by the Constitution to the method adopted. "More Misbranding" is not only the title of the alleged defamatory publication, but that constitutes its dominant theme. Therein the plaintiff is nowhere expressly charged with a violation of the Food and Drugs Act. That act is, however, referred to, and the amendment of 1912 is quoted. The publication indicates that the Med-A-Dent package or label bears or contains a statement regarding the curative or

therapeutic effect of Med-A-Dent which is false and fraudulent. In the portion of the article entitled "Conclusions" it is said that "leading the public to believe that pyorrhea can be prevented or cured without professional treatment by a dentist is not only contrary to law but inimical to public and professional interests. * * *" That is the nearest approach which the article makes to charging the plaintiff with a violation of law. Patently and obviously that sentence means, and the article taken as a whole means, that the plaintiff violated the Food and Drugs Statute, and that one of the acts by which the violation was brought about was misbranding. The defendant did not particularize further. True, misbranding is not in and of itself a violation of the act or of any section thereof, but, inasmuch as this fact was probably unknown to the average reader of the article, the publication would not thereby be less actionable. See Newell on Libel and Slander, p. 112; Odgers on Libel and Slander, 33; 36 Corpus Juris, pp. 1196, 1197. On the other hand, such statement would not in law make it impossible for the defendant to justify the crime charged by the defendant against the plaintiff. To do so, however, the defendant must show the commission by the plaintiff of some combination of acts, including misbranding, that would constitute a violation of the Food and Drugs Act, for the principle of law is well established that "where the truth of the charge is pleaded as a justification and defense in an action for slander [or libel] if the charge is a specific one, the mere averment of the truth of it is sufficient, but if the charge is general in its nature, the pleading in justification to be sufficient must aver the acts, which constitute the offense of which the plaintiff is [charged to be] guilty." Ray v. Shemwell, 174 Ky. 54, 191 S. W. 662, Ann. Cas. 1918C, p. 1122; Donahoe v. Star Pub. Co., 3 Pennewill, 545, 553, 53 A. 1028. Though a charge is usually spoken of as general or specific, these are relative terms. They are not to be understood to denote an absolute or perfect state or condition. The charge here made is not absolutely general. It does more than charge the plaintiff with a violation of the Food and Drugs Act. It says that misbranding constituted an element of that violation. Yet the charge is not completely specific, for misbranding alone does not constitute a violation of the Food and Drugs Act. There are other essentials; alternative essentials. Hence the charge is general, save in the one particular

specified, and the defendant in its plea of justification is at liberty to set up any combination of facts prohibited by the act provided misbranding be one of the facts of the combination.

[8] The plaintiff points out, however, that by innuendoes it asserted in its declaration that the violation of the Food and Drugs Act with which the plaintiff was charged by the defendant consisted of the manufacture of misbranded drugs, but, inasmuch as such innuendoes are not borne out by the publication, the innuendoes may be rejected as surplusage. 17 R. C. L. 397. It follows that the plea in justification is valid and that the demurrer to the new assignment must be sustained.

[9] The declaration contains, however, four counts. That which has been hereinbefore said applies to the first count only. Yet the plea in justification is expressly directed to each of the four counts. It is urged by the plaintiff that the plea, though valid as a plea in justification to the first count, is not a valid plea to the remaining counts in that in none of those counts is it alleged that the defendant, by the publication in question, charged the plaintiff with a violation of the Food and Drugs Act. On the contrary, as set out in plaintiff's brief, the substance of those counts is as follows:

"Second Count. That 'the said plaintiff by manufacturing and selling its said product called Med-A-Dent' was guilty of the fraudulent business practice or dealing of manufacturing and selling its said product in packages or with labels thereon which constituted 'misbranding' as the term is defined in said act.

"Third Count. That the said plaintiff was 'guilty of the fraudulent business practice or dealing of manufacturing and selling as a dental product having curative or therapeutic value in the treatment of pyorrhea merely a tooth paste under the product name of Med-A-Dent, which consisted largely of glycerin, chalk and soap, oil of peppermint, menthol and a yellow dye, without any ingredients or substance therein which had any curative or therapeutic value in the treatment of pyorrhea.'

"Fourth Count. That the plaintiff was guilty of the fraudulent business practice or dealing, in its manufacture and distribution of its said dental product, Med-A-Dent, of deceiving the public and falsely causing it to believe that pyorrhea could be prevented or cured by the use of Med-A-Dent, without professional treatment by a dentist."

Inasmuch as the plea in justification was

predicated upon the theory that the second, third, and fourth counts, as well as the first, alleged that the publication charged a violation of the Food and Drugs Act, the plea in justification is neither apt nor responsive to the second, third, and fourth counts, and, consequently, must, under the demurrer filed by the defendant to the new assignment, be held insufficient as a plea in justification to the second, third, and fourth counts.

[10] To the replication de injuria filed to defendant's plea in justification the defendant has filed a motion to strike out a part thereof. The replication is in form and substance a general traverse. The part to which the motion is directed consists of averments of fact tending indirectly and argumentatively to support the general denial. Such averments have no place in a general traverse. The motion to strike must be granted.